**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**


| | | |
|---|---|---|
| | § | |
| **DAVID K. BYRD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:07-CV-0111-C** |
| | § | **ECF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |


## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed June 4, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on October 5, 2007, and Defendant filed a brief on October 30, 2007. The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case on June 26, 2007, 2007 (Doc. 8), and August 2, 2007 (Doc. 13). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

## I.    STATEMENT OF THE CASE

Plaintiff first filed an application for disability insurance benefits on May 24, 1996, alleging disability beginning January 2, 1996. Tr. 13, 93. Plaintiff's application was denied initially and upon reconsideration. Tr. 13, 74-78, 82-85. Plaintiff filed a Request for Hearing by Administrative

Law Judge on December 13, 1996, and this case came for hearing before the Administrative Law Judge ("ALJ") on April 7, 1997.  Tr. 30-71, 86-87.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 33-65.  Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 65-70.  The ALJ issued a decision unfavorable to Plaintiff on April 24, 1997.  Tr. 10-23.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements on January 2, 1996, through the date of his decision, and Plaintiff had not engaged in substantial gainful activity at any time since January 2, 1996.  Tr. 14.  Plaintiff has "severe" impairments, including herniated nucleus pulposus of the thoracic spine, degenerative disc disease of the lumbosacral spine, and status post bilateral carpal tunnel release.  *Id*.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 19.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 18.

The ALJ found that Plaintiff could not return to his past relevant work as an electrician or a general supervisor/desk job.  Tr. 13, 21-22.  He noted that Plaintiff was considered a "younger individual" with a high school education and two years of college.  20 C.F.R. §§ 416.963, 416.964; Tr. 18.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of sedentary work activity. Plaintiff's ability to perform sedentary work is reduced by the need to sit or stand, at his option, while performing his job; the need to avoid crouching, climbing, balancing, crawling, stooping, and kneeling; the need to avoid driving, operating, or working around heavy equipment or machinery; the need to avoid fine finger dexterity; and the need to engage in a job which has simple, direct, and concrete supervision, with tasks no more complex than those learned and performed by rote with few variables and little judgment. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 22-23. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of clerical sorter, with 1,211 jobs in Texas and 93,217 jobs nationally, and document preparer, with 1,300 jobs in Texas and 52,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 23.

Plaintiff submitted a Request for Review of Hearing Decision/Order on June 23, 1997. Tr. 8. The Appeals Council denied Plaintiff's request and issued its opinion on October 23, 1998, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and the additional evidence provided that was not before the ALJ, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 4-6. The ALJ's decision, therefore, became the final decision of the Commissioner. Plaintiff appealed this decision to the United States District Court and this case was remanded to the Commissioner on August 9, 1999, and back to an ALJ on September 1, 1999. Tr. 446, 499-500, 508-10. The ALJ held a hearing on April 24, 2000. Tr. 483.

Plaintiff, represented by an attorney, testified in his own behalf.  *Id*.  Dr. Otto Willbanks, a medical expert ("ME"), and Clinton Wainwright, Ed.D., a vocational expert ("VE"), also appeared and testified.  *Id*.  The May 24, 1996, application was again denied in an ALJ decision on June 13, 2000. Tr. 480-97.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that: Plaintiff met the disability insured status requirements on January 2, 1996, through the date of his decision, and Plaintiff had not engaged in substantial gainful activity at any time since January 2, 1996.  Tr. 484.  Plaintiff has "severe" impairments, including minor degenerative changes in his thoracic and lumbosacral spines, overuse syndrome and restless leg syndrome of the lower extremities, dysthymia, personality disorder NOS with avoidant and compulsive traits, conversion disorder, and status post bilateral carpal tunnel releases, but Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required to determine whether Plaintiff retained the RFC to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making his RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 486-87.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 486.

The ALJ found that Plaintiff retained the RFC to perform a full range of medium work.  Dr. Wainwright, the VE, testified that although Plaintiff performed his past relevant work as a master

electrician at the heavy level of exertion, such work is considered medium exertional work as it is generally performed in the national economy. The ALJ found that Plaintiff could return to his past relevant work as a master electrician and, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 2, 1996, through the date of his decision. Tr. 484, 488-89.

Plaintiff, through his attorney, filed exceptions from the ALJ's decision on July 21, 2000. Tr. 461-76. The Appeals Council denied Plaintiff's request and issued its opinion on July 20, 2001, indicating that although it had considered Plaintiff's reasons for disagreement with the ALJ's decision, it concluded that the exceptions provided no basis for changing the ALJ's decision. Tr. 458. By application of the *res judicata* doctrine, the ALJ's June 13, 2000, decision became the final decision of the Commissioner on the issue of Plaintiff's disability on and prior to that date. *Id.*

Plaintiff filed the applications for disability insurance benefits and for supplemental security income benefits before the court on September 19, 2001, with a protective filing date of August 29, 2001, alleging disability beginning January 2, 1996. Tr. 446, 622-24. Plaintiff's applications were denied initially and upon reconsideration. Tr. 446, 607-10, 613-17. Plaintiff filed a Request for Hearing by Administrative Law Judge, and this case came for hearing before the ALJ on April 21, 2003. Tr. 446, 604, 1024-37, 1187-1200. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 446, 1026-37. Testimony was taken until such time as an incomplete medical record was identified, and the case was continued for the purpose of obtaining updated treatment records. The hearing was rescheduled and held on August 12, 2003. Tr. 447, 1038-79, 1120–86. Plaintiff again testified in his own behalf. Tr. 1041-67, 1076-77, 1123-1147, 1157. Dr. Ann C. Turbeville, a medical expert ("ME"), and Jerry Taylor, a vocational expert ("VE"), appeared and testified as well. Tr. 447, 1067-76, 1148-54. At the hearing, Plaintiff requested that his alleged

onset date be amended to June 14, 2000. Tr. 447. The ALJ issued a decision unfavorable to Plaintiff on August 29, 2003. Tr. 443-57.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements on June 14, 2000, and continued to meet them through December 31, 2001, and Plaintiff had not engaged in substantial gainful activity at any time since June 14, 2000. Tr. 447. Plaintiff has "severe" impairments, including a somatoform disorder, with chronic pain, including fibromyalgia; depression, treated; a history of successful bilateral carpal tunnel release; mild degenerative disc disease of the lumbar spine; and a remote history of neck surgery. *Id*. However, Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the RFC to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 454.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 451, 453.

The ALJ found that Plaintiff could not return to his past relevant work as an electrician. Tr. 455. He noted that Plaintiff was considered a "younger individual" on June 14, 2000, the amended alleged onset date, and was considered "closely approaching advanced age" at the time of the ALJ hearing, with a high school education and two years of college. 20 C.F.R. §§ 416.963, 416.964; Tr. 456.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the physical exertional requirements of light work activity, limited to jobs that do not require more than occasional use of the upper extremities for repetitive activity; that do not require more than simple work instructions; and that do not require collaboration with co-workers or contact with the public. Tr. 454. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 456. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of folding machine operator, with 3,900 jobs in Texas and 50,000 jobs nationally; conveyor tender, with 2,900 jobs in Texas and 44,000 jobs nationally; and towel rolling machine operator, with 2,300 jobs in Texas and 30,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 457.

Plaintiff submitted a Request for Review of Hearing Decision/Order on October 28, 2003. Tr. 441. The Appeals Council denied Plaintiff's request and issued its opinion on February 13, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and the appeal brief in support, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 437-40. The ALJ's decision, therefore, became the final decision of the Commissioner.

Plaintiff appealed to the United States District Court, and the Commissioner filed a Motion to Remand. This matter was remanded to the Commissioner on September 24, 2004, and back to an ALJ on December 23, 2005. Tr. 1113, 1118-21. The ALJ held a remand hearing on February 21, 2006. Tr. 1101. Plaintiff, represented by a non-attorney, testified in his own behalf. *Id.* Carol S.

Bennett, a vocational expert ("VE"), also appeared and testified. *Id*. The August 29, 2001, applications were again denied in an ALJ decision on September 21, 2006. Tr. 1098-1112.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements on June 14, 2000, and last met them on December 31, 2001. For an award of disability and disability insurance benefits, Plaintiff had to prove that his disability began between these two dates. Tr. 1102-03, 1110. However, for an award of SSI benefits, Plaintiff must establish that he is or has been disabled at some point from his protective filing date of August 29, 2001, through the date of the ALJ's decision, February 21, 2006. Tr. 1101-02. The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time after June 14, 2000. Tr. 1102, 1110. The ALJ found that Plaintiff has "severe" impairments, including somatoform disorder, with chronic pain and fibromyalgia; depression; bilateral carpal tunnel syndrome status-post release; degenerative disc disease in the lumbar spine; and status-post remote neck surgery. He noted that Plaintiff has developed irritable bowel syndrome and mild sleep apnea but found that Plaintiff has not had an impairment or combination of impairments that were severe enough to meet or equal in severity any impairment listed in the Listing of Impairments. 20 C.F.R. Part 404, Subpt. P. App. 1. Tr. 1103, 1111.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonable accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 1104, 1111.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 1104-05, 1111. The ALJ found that Plaintiff has impairments which could reasonably be expected to produce

the subjective symptoms he alleges but found that the severity of the pain and functional limitations were not reasonably supported by the medical evidence available through the time of the 2003 hearing. Tr. 1103. The ALJ noted Plaintiff's testimony of being unable to participate in any activities; of being confined to his bed because of daily headaches from 9:30 a.m. until 2:00 p.m. and again from 3:00 p.m. until 6:00 p.m., when he would eat supper and return to bed; of being unable to perform any household chores or yard work; of being unable to sit more than 15 minutes, walk more than one city block, or stand more than 10 minutes at a time; of being precluded from holding on to things because of hand pain and cramping; of being unable to lift more than a bag of sugar; of experiencing suicidality for two years before the hearing; of passing numerous kidney stones; and of experiencing hearing and vision deficits, as well as severe depression, anxiety, and panic attacks. *Id*. The ALJ noted that Plaintiff has reported that he is able to take care of his own personal hygiene and grooming and is the primary caretaker of his two young daughters and his elderly, ill parents. Tr. 1104. The ALJ noted Plaintiff's report of spending 21 to 22 hours per day in his room for the previous 5 years; of extreme social isolation; and severe symptoms from irritable bowel syndrome. *Id*.

The ALJ compared Plaintiff's reports of his treatment for his mental impairments with the actual dates of such treatment. He noted that Plaintiff's reports as to his level of functioning were inconsistent with his role as primary caretaker of his young children and his care of his ill, dependant parents, noting that such role is both demanding and stressful and inconsistent with his allegations of disability and his allegations regarding the limitations imposed by his impairments. Tr. 1104-05. The ALJ noted that there is no objective, corroborated evidence of delusion, hallucinations, psychotic thoughts, marked emotional irregularities, cognitive limitations, or social isolation, nor is there a history of bizarre, aberrant, or harmful behaviors. Tr. 1109. The ALJ found that Plaintiff has at all times had certain work-related mental limitations: he can understand, remember, and carry

out only simple job instructions; he cannot work in collaboration with co-workers; and he cannot have contact with the public. *Id.*

The ALJ found that Plaintiff may experience some degree of pain or discomfort at times of overexertion but noted that even a moderate level of pain is not, by itself, disabling. Tr. 1105.

The ALJ found that Plaintiff had not been able to return to his past relevant work as an aircraft electrician since June 14, 2000. Tr. 1102, 1109. Plaintiff was considered "closely approaching advanced age" on January 29, 2002, his 50th birthday. He has a high school education and two years of college. 20 C.F.R. §§ 416.963, 416.964; Tr. 1111.

The ALJ found that Plaintiff retained the RFC to perform the requirements of a modified range of relatively less strenuous light work activity, limited to jobs that do not require more than occasional use of the upper extremities for repetitive activity; that do not require more than simple work instructions; and that do not require collaboration with co-workers or contact with the public. Tr. 1109.

Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. *Id.* He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the job of machine tender, with 2,000 jobs in Texas and 45,000 jobs nationally. Tr. 1110, 1112. Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through December 31, 2001, the date he last met the insured status requirements. Tr. 1112. Plaintiff submitted a Request for Review of the Hearing Decision on October 24, 2006. Tr. 1095-97.

The Appeals Council found no reason to assume jurisdiction over this matter on April 5, 2007. Tr. 1083-86.

On June 4, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 1110, 1112.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to properly consider the opinions of the treating and examining physicians with regard to Plaintiff's impairments and the effects of such impairments on his ability to work; erred in making his credibility determination by failing to properly consider Plaintiff's testimony regarding the limitations imposed by his impairments; and failed to consider the entire record in making this determination.  Plaintiff also claims that the ALJ erred in finding that the Commissioner had carried his burden of establishing alternative work which the Plaintiff could perform at the fifth step of the sequential evaluation by relying upon unsupported testimony of the VE to establish that there was a substantial number of jobs in the national economy that Plaintiff could perform.  The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.       Whether the RFC determination is supported by substantial evidence in the record.**

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence in the record because the ALJ failed to properly consider the opinions of the treating and examining physicians regarding the limitations imposed by Plaintiff's impairments, erred in considering Plaintiff's testimony regarding the limitations imposed by his impairments, and erred in making his credibility finding.

Plaintiff argues that the ALJ erred by accepting the testimony of the ME, Dr. Turbeville, over the evidence and opinions provided by his treating and examining sources, including Dr. David J. Randell, Ms. Shae Gowan, Dr. Gordon Abbo, and Dr. G. Alan Trimble.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). Thus, the ALJ was not required to give any weight to any non-medical opinions indicating that Plaintiff was disabled or unable to work.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to

controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

Plaintiff alleges that the ALJ improperly placed great weight upon the opinions of Dr. Turbeville, a non-treating psychiatrist, who acted as a medical advisor at the 2003 hearing, and ignored the records and findings of Plaintiff's treating and examining physicians.

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions regarding the nature and severity of impairments and whether such impairments equal the criteria of any impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.912(b)(6), and 416.927(f)(2)(iii). When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert." Social Security Ruling 96-6p (July 2, 1996) ("SR 96-6p"). Clearly, an ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments. *Richardson v. Perales,* 402 U.S. 389, 408 (1971).

The record contains a mental RFC assessment questionnaire, completed by Shae Gowan, an LPC intern who provided Plaintiff with counseling services. Tr. 988-90. Ms. Gowan indicated by checkmark that Plaintiff was limited in several areas. Tr. 988-89. She also provided more detailed remarks. Tr. 990. She indicated that Plaintiff's memory is significantly limited by the types and amounts of medications that he takes, as well as by his physical and mental symptoms. *Id.* She indicated that Plaintiff's concentration was significantly impaired, that his ability to work without interruption was limited by his inability to recall instructions and his poor concentration, and that his ability to adapt to change was hindered by his condition. *Id.* She indicated that although

Plaintiff is able to understand instructions, he is unable to remember even basic instructions for lengthy periods of time. *Id.* She also indicated that Plaintiff may have difficulty following a schedule and may be distracted by co-workers or may have such co-workers negatively impact his anxiety symptoms. *Id.* She also indicated that Plaintiff would be unable to complete a workday without a need to take a break and ease his symptoms. *Id.*

Ms. Gowan indicated in her notes that Plaintiff reported that he was serving as the primary caretaker for the house and the children while his wife is working and attending classes. Tr. 993. She also indicated Plaintiff's report of caring for his elderly parents. Tr. 993, 996. The record indicates that on September 26, 2002, Plaintiff was discharged from therapy by Ms. Gowan, who indicated that although Plaintiff still suffers from anxiety and depression symptoms, these are less overwhelming than they have been in the past and he is able to normalize their link with his physical symptoms. Tr. 994. In a separate statement she indicated that Plaintiff continued to meet with counselors for family sessions. Tr. 1013.

Dr. Abbo conducted a mental status examination and initial psychiatric evaluation on December 21, 2001. Tr. 797-800. Dr. Abbo indicated that Plaintiff's mood was mildly depressed; affect was appropriate; speech was normal; thought processes were coherent and logical; thought content was normal; no hallucinations; and reports of suicidal thoughts off and on with no plans or intent. Tr. 799. He indicated that Plaintiff was oriented to place, time, and person; was attentive with impaired concentration, intact memory, and judgment that was "ok"; and had "fairly good" insight. *Id.* He opined that Plaintiff's diagnosis was major depressive disorder, recurrent, and

opined that Plaintiff had a Global Assessment of Functioning ("GAF")[1] score on Axis V[2] of 40[3].

Tr. 800.

Plaintiff also underwent a psychiatric consultative examination by Dr. Trimble, on January 3, 2002. Tr. 773-77. Dr. Trimble noted that Plaintiff's symptoms appeared to have improved slightly since his hospitalization at Rivercrest Hospital. Tr. 774. He noted that upon examination, Plaintiff's mood was depressed; affect was congruent; and there was no evidence of preoccupations, thought disturbances, perceptual distortions, delusions, hallucinations, or suicidal ideation except as may be reported subjectively. Tr. 775. He noted that Plaintiff was oriented to person, place and time, and was able to remember six numbers forward and his Social Security number backwards. Plaintiff was able to recall five of five past presidents and other remote memory data. *Id*. He opined that Plaintiff's judgment was intact, he was able to relate, and he was cooperative with no abnormal motor activity, mannerisms, or eye contact. *Id*. Dr. Trimble noted that Plaintiff reported previously handling the finances and doing the laundry if he is feeling well. *Id*. He opined that Plaintiff gets along well with family but has few friends because most of them he knew through work and he otherwise avoids people in general. Tr. 776. Dr. Trimble opined that

---

[1]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[2]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[3]     The DSM-IV provides that a GAF score of 31 to 40 indicates some "impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

Plaintiff's diagnosis on Axis I was major depressive disorder, chronic, in partial remission, with a current GAF of 50[4].

Dr. Randell completed a physician's statement form in connection with an application for food stamps in which he indicated that Plaintiff cannot work because of physical and mental problems. Tr. 765. Dr. Randell also completed a mental RFC assessment questionnaire on April 9, 2003. Tr. 927-930. Dr. Randell indicated that Plaintiff was limited in the ability to perform many mental work-related activities. *Id.* He indicated that Plaintiff's memory is diminished by his mental condition and medication. Tr. 930.[5] He indicated that Plaintiff's concentration, memory, and attention span are impaired by medication and constant pain. *Id.* He indicated that Plaintiff is easily frustrated; experiences an inability to take criticism which increases his stress, anxiety, and depression; and experiences anxiety which increases with changes. *Id.* Dr. Randell indicated that Plaintiff has a hard time focusing, remaining on task, and following detailed instructions. Tr. 931.

---

[4] A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 324.

[5] The form completed and signed by Dr. Randell indicates in Part III to "see attached." Tr. 929. An unsigned, typewritten annotation, labeled "Functional Capacity Assessment," is attached. Tr. 931. Although the form completed by Dr. Randell in the section titled "Remarks" is blank, another unsigned, typewritten annotation, labeled "Remarks" is attached as well. Tr. 930.

In his opinion the ALJ noted:

Curiously, I note that the interrogatories are accompanied by multiple lengthy unsigned attachments, penned in less-than-articular and grammatically incorrect language. The qualifications or identity of the author of the attachments notwithstanding at this point, the documents are unsigned, as noted, and reflect a plethora of subjective complaints of a nature and detail not consistent with medical evaluation and unsubstantiated by objective medical evidence in Dr. Randell's records of treatment.

The ALJ thus treated these annotations as a part of Dr. Randell's opinion in determining whether to give such opinion controlling weight. Tr. 1107.

Dr. Randell also completed a physical RFC assessment questionnaire. Tr. 932-36. He indicated that Plaintiff can lift only 2 to 3 pounds frequently and 5 pounds occasionally; that Plaintiff cannot perform overhead lifting; that Plaintiff's ability to reach, finger, and feel are all moderately affected by his impairments; that his ability to push/pull and handle are severely affected by his impairments; that Plaintiff can stand for ¼ hour at a time and for ½ hour total during an 8-hour workday; that Plaintiff can sit for ½ hour at a time for a total of 2 hours during an 8-hour workday; and that Plaintiff can only occasionally stoop and should never climb, balance, crouch, kneel, or crawl. Tr. 934-35.

Plaintiff underwent an internal medicine consultative examination on February 28, 2002. Tr. 779-81. O. Martin Franklin, D.O., the consultative examiner, noted that Plaintiff was alert and oriented to person, place and time; emotional affect was depressed; and gross mental status was normal. Tr. 781. Dr. Franklin noted Plaintiff's report of being able to stand for 10 to 15 minutes and sit for 30 to 45 minutes doing a job and being able to walk one city block. Tr. 779.

In *Masterson* the Fifth Circuit noted that the ALJ relied upon the testimony of the ME regarding the limitations imposed by the claimant's mental impairment. 309 F.3d at 270 (noting that the ME testified that the claimant experienced slight restrictions in daily activities, slight to moderate difficulties in social functioning, and seldom to often-experienced deficiencies of concentration). In *Leggett v. Chater* the Fifth Circuit noted that the ALJ relied in part upon the testimony of the ME who opined, based on the evidence in the record, that the claimant was capable of performing sedentary work. 67 F.3d 558, 565 (5th Cir. 1995). Thus, it is apparent that the testimony of the ME may be used by the ALJ in determining the limitations imposed by the claimant's impairments. The court does not find that the ALJ erred in considering the opinions of the non-examining ME in formulating his RFC assessment. However, the Plaintiff argues that the

ALJ impermissibly relied upon the opinion of the ME while inappropriately discounting or rejecting the opinions of the treatment providers.

Clearly, good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). In *Myers* the Commissioner's decision was reversed and remanded where the ALJ had "summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Id.* In *Leggett* the Fifth Circuit found that the ALJ had good cause to give little weight to the opinion of a treating physician which was not consistent with other opinions of treating physicians, the objective medical evidence, and the claimant's claims regarding his physical abilities. 67 F.3d at 566.

In his opinion the ALJ noted that Dr. Randell had treated Plaintiff over a period of time, managing his treatment regimen and referring him for extensive evaluations of his symptoms. He notes that Dr. Randell prescribed medications for Plaintiff, including his pain and anti-depressant medications. Tr. 1106. He noted that despite the numerous referrals, most of the results were essentially benign throughout, including objective tests such as EEG and CT scans, as well as a neurological work-up and sinus evaluation. Tr. 1107. The ALJ indicated that he had considered Dr. Randell's opinions but had not accorded them significant weight. Tr. 1107-08.

In *Myers* the Fifth Circuit noted that "[a]n ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization." 238 F.3d at 621 (citing *Newton*, 209 F.3d at 456). The ALJ indicated that he had not given significant weight to Dr. Randell's opinions regarding limitations imposed by Plaintiff's mental impairments because he is not a psychiatrist and had not

given significant weight to Dr. Randell's other opinions because they are unsupported by his records of treatment, reflect subjective complaints unsubstantiated by his treatment and progress notes, and were not prepared for any legitimate medical purposes. Tr. 1107-08. The ALJ correctly noted that Dr. Randell is not a psychiatrist and that he did not refer to any particular diagnostic tests or clinical observations in making his assessment. Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. Tex. 1995) (internal citations and quotation omitted). The ALJ's opinion demonstrates good cause for giving less than controlling weight to Dr. Randell's opinions regarding the limitations imposed by Plaintiff's impairments.

The ALJ also indicated that he had considered the notes of Ms. Gowan and her recommendations. Tr. 1108. He correctly noted that she does not have the credentials necessary for rendering a medical source opinion. *Id*. She is not an acceptable medical source as defined in 20 C.F.R. § 404.1513 (a). The ALJ also noted that Ms. Gowan proposed limitations based on Plaintiff's physical impairments, which she did not treat or address. The ALJ noted that during the time period relevant to this application, Plaintiff has not required in-patient psychiatric care or supervised or assisted living services and has borne responsibility for the care of his children, home, and elderly parents which was inconsistent with the limitations alleged by Ms. Gowan. The ALJ was not required to give Ms. Gowan's opinions any special weight and adequately discussed the basis for discounting such opinions.

Plaintiff also argues that the ALJ erred by relying upon the testimony of Dr. Turbeville when she failed to mention the psychological assessments of Dr. Abbo or Dr. Trimble. Plaintiff

specifically argues that Dr. Turbeville failed to make reference to the impaired concentration noted by both Drs. Abbo and Trimble.

The ALJ noted Dr. Turbeville's testimony regarding evidence in the record indicating that Plaintiff had excellent memory, concentration, and sequencing. Tr. 1105. The ALJ also noted that Plaintiff reported debilitating problems with memory and concentration. *Id.* The ALJ also noted that Dr. Trubeville's proposed nonexertional limitations based upon Plaintiff's reaction to stress, intolerance to criticism, and decreased ability to attend. Tr. 1108.

The ALJ found that Plaintiff's severe mental impairments have led to a mild restriction of his activities of daily living, a moderate difficulty in his ability to maintain social functioning, a moderate restriction in his concentration, persistence, or pace, and to one or two episodes of decompensation. Tr. 1111. In so finding, the ALJ discussed Plaintiff's mental health treatment and the care provided to him, as well as Plaintiff's subjective complaints. The ALJ did find that Plaintiff's concentration was moderately impacted by his mental impairments but did not find Plaintiff to be as limited as he has subjectively alleged.

The ALJ found that Plaintiff's work-related mental limitations include being able to understand, remember, and carry out only simple job instructions; being unable to work with co-workers; and being unable to have contact with the public. Tr. 1109. This finding is consistent not only with the opinion of the non-examining ME but is also consistent with other evidence in the record, including certain of Plaintiff's subjective allegations regarding his mental and social limitations and the opinions of his various treating and examining sources, who indicated that Plaintiff experienced impaired memory and concentration, as well as anxiety and stress, which are exacerbated by criticism and contact with groups of people. Conflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). "The ALJ as factfinder has the sole responsibility for weighing

the evidence and may choose whichever physician's diagnosis is most supported by the record."

*Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The court finds that the ALJ did not err by failing to give appropriate weight to the treating and examining providers, and he did not err by relying in part upon the opinion of the non-examining ME.

Plaintiff also argues that the ALJ erred in making his credibility determination. Plaintiff essentially argues that the ALJ erred by failing to accept his allegations and testimony regarding the limitations imposed by his impairments and demonstrated misunderstanding about the nature of his mental health treatment. Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> [C]onsider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. The record demonstrates that the ALJ found that Plaintiff's medically determinable severe impairments or combination of impairments included somatoform disorder, chronic pain and fibromyalgia, depression, bilateral carpal tunnel syndrome status-post release; degenerative disk disease in the lumbar spine, and status post remote neck surgery. Tr. 1103.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain

or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

In his opinion the ALJ found that Plaintiff's subjective allegations regarding the limitations imposed by his impairments were not credible insofar as Plaintiff alleged that he was so severely impaired as to be unable to perform all work activities. Tr. 1106. The ALJ described varying Plaintiff's reports of his own activities and compared Plaintiff's allegations with the medical evidence of record. Tr. 1104-06. The ALJ specifically noted Plaintiff's testimony minimizing his level of functioning regarding his two children and the care of his elderly parents. The ALJ correctly noted that Plaintiff reported elsewhere in the record that he was the primary caretaker of the home and of his parents. The record indicates that Plaintiff reported being the primary caregiver for his two children while his wife went to school and worked, that he planned activities for them when they were home during the summer, that he was responsible for paying bills and making

arrangements in the care of his parents, and that he would take them to doctors' appointments when they did not have a ride. The ALJ's finding that these tasks, clearly demanding and stressful, were inconsistent with Plaintiff's own reports and testimony regarding the extreme limitations imposed by his impairments. The ALJ supported this finding with relevant references to the voluminous evidence of record.

The record indicates that the ALJ considered, but ultimately did not accept, Plaintiff's subjective allegations regarding the limitations imposed by Plaintiff's impairments. The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence. *Hollis*, 837 F.2d at 1385; *Jones*, 829 F.2d at 527. The ALJ's credibility determination is supported by substantial evidence in the record and does not demonstrate a misunderstanding of Plaintiff's role in the lives of his children and in the care of his parents. The ALJ did not err in considering the evidence, including Plaintiff's subjective allegations regarding the limitations imposed by his impairment, and did not err in making his credibility determination.

Plaintiff also argues that the RFC determination is not supported by substantial evidence in the record. He argues that all of the evidence in the record demonstrates that he is experiencing severe pain which is exacerbated by activity and which is inconsistent with a finding that he can perform a range of light work activity. He argues that the ALJ erred by failing to consider all of the evidence in the record in making his RFC assessment.

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of

treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

The ALJ found that Plaintiff retained the RFC to perform a limited range of light work activity. In so finding, the ALJ noted the opinions of the state agency medical consultants ("SAMCs"), who opined that Plaintiff retained the RFC for light work. Tr. 1108. He noted that Dr. Turbeville also testified that Plaintiff would be limited to light work activity. The ALJ noted that the evidence of record did not demonstrate identifiable physical limitations. *Id.* The ALJ also noted that Plaintiff has experienced pain but found that such pain was not inconsistent with the performance of any work activities. Tr. 1105-06.

Clearly, pain may constitute a non-exertional impairment that limits the range of jobs a claimant otherwise would be able to perform. *See Carter v. Heckler*, 712 F.2d 137, 141-42 (5th Cir. 1983). A claimant's testimony of pain is insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). The ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly

unresponsive to therapeutic treatment." *Id.*; *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren*, 925 F.2d at 128. Subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d at 522 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Id.* (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)). In this case the ALJ did not find that Plaintiff's complaints of disabling pain were entirely credible. He noted that Plaintiff has not undertaken any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions described, and he noted the record did not reflect indicia of intractable pain. Tr. 1108.

The ALJ found that the opinions of the SAMCs and Dr. Turbeville regarding the limitations imposed by Plaintiff's impairments were generally well-supported and found that Plaintiff retained the RFC for a limited range of work at the light exertional level. Tr. 1109. The ALJ also incorporated a limitation on use of the upper extremities for repetitive activities, as well as the limitations based on Plaintiff's mental impairments discussed above.

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The record demonstrates that the ALJ considered the evidence of record in making his RFC finding. The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The court finds that the ALJ did not err and the RFC assessment is supported by substantial evidence in the record.

**B. Whether the Commissioner failed to carry the burden at step 5 to show that Plaintiff can perform work which exists in significant numbers in the national economy**.

Plaintiff argues that the Commissioner failed to carry the burden at step 5 to show that Plaintiff can perform work which exists in significant numbers in the national economy, where the ALJ relied upon the testimony of the VE who identified a number of machine tender jobs that could be performed at the light level which did not require more than occasional repetitive use of the upper extremities.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills. *See* Soc. Sec. Ruling 00-4p (December 4, 2000) ("SSR 00-4p"). This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other. *Id.* Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* SSR 00-4p notes that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." This ruling also requires the ALJ to ask about any possible conflicts between the testimony of the VE and the information provided in the DOT. The Social Security Administration has taken "administrative notice" of the

DOT.  *See* 20 C.F.R. § 416.966(d)(1).  However, the Fifth Circuit has recognized that "the DOT is

not comprehensive, in that it cannot and does not purport to include each and every specific skill or

qualification for a particular job."  *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields,*

805 F.2d at 1171).

In *Carey* the Fifth Circuit addressed a case where the claimant argued that the testimony of

the VE, which the ALJ relied upon, conflicted with the *Dictionary of Occupational Titles*.  *See* 230

F.3d at 146.  The Fifth Circuit again noted that "'[t]he value of a vocational expert is that he [or she]

is familiar with the specific requirements of a particular occupation, including working conditions

and the attributes and skills needed'" and found that "DOT job descriptions should not be given a

role that is exclusive of more specific vocational expert testimony with respect to the effect of an

individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145 (quoting

*Fields*, 805 F.2d at 1170).  The Court indicated its agreement with the majority of the circuits that

the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for

doing so.  *Id*.

In this case the VE testified that most machine tender jobs are performed at the medium to

heavy exertional level.  She testified that there are machine tender jobs which were performed at the

light level that required no more than occasional use of the upper extremities for repetitive activities.

Tr. 1173.  She testified that she would "eliminate some of my jobs" in responding to the hypothetical

question, with the limitations noted, and identified "at least 2,000" such jobs in Texas.  *Id*.  She

testified extensively as to the basis for her testimony, referencing the DOT as well as the Handbook

for Analyzing jobs and other supplements, given that the DOT does not discuss the issue of

repetitive use in describing jobs.  Tr. 1173-78.  She testified that the DOT was "only the first book

we use."  Tr. 1178.  She specifically indicated that the number identified, 2,000, represented a

reduction in numbers to reflect the limitations in the hypothetical question. Tr. 1180. She testified that although she did not know the exact percentage, in comparing the light to medium tender jobs, she knew that "there's quite a few light" machine tender jobs. Tr. 1181.

Plaintiff argues that the "amorphous testimony of the VE" should not constitute substantial evidence because so few jobs were identified and the VE clearly estimated the number of machine tender jobs that might be light and might not involve repetitive use of the arms. However, the testimony of the VE demonstrates that she explained the basis for the number of jobs identified, that she reduced the number of jobs to reflect the limitations incorporated into the hypothetical question, and that she appropriately used her expertise "to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. The record demonstrates an adequate basis for relying upon the testimony of the VE. Moreover, the number of jobs identified, which were reduced to reflect the limitations included in the hypothetical question, 2,000 in Texas, and 45,000 in the national economy, are sufficient to constitute work which exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1566, 416.966.

The court finds that the ALJ did not err in relying upon the testimony of the VE and that the Commissioner appropriately carried his burden at step 5 in the sequential evaluation process in finding that Plaintiff can perform work which exists in significant numbers in the national economy.

The ALJ opinion, including his RFC assessment, his credibility finding, and his step 5 determination that Plaintiff retains the RFC to perform work which exists in significant numbers in the national economy is supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ did not err, that the ALJ's opinion and the RFC determination are supported by substantial evidence in the record, that the Commissioners's decision should be affirmed, and that Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's applications for a period of disability and disability insurance benefits and for SSI benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed June 4, 2007, is **DISMISSED WITH PREJUDICE.**

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 30th day of September,

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**